Michael DAVID, Appellant,

v.

STATE of Alaska, Appellee.

No. A–599.

Court of Appeals of Alaska.

May 10, 1985.

---

**1234**

Nelson Traverso, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

George F. Schaefer, Dist. Atty., Bethel, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This case presents the single issue of whether the defendant was entitled to an instruction on the use of force in defense of a third person (AS 11.81.340) at his trial for fourth-degree assault.

The state's evidence was directed at establishing that twenty-six-year-old Michael David kicked his sixty-eight-year-old uncle, Andrew David, in the groin area March 6, 1984, in the village of Kwethluk. According to Andrew David, he noticed Michael David's children playing near his dogs in the area separating Andrew David's house from the house occupied by Michael David and his family. Andrew David went out onto his steps to tell the children to get away from his dogs. Michael David heard him, and charged up to his uncle, saying, "You want to try me?" and kicked him on the inside of the thigh. The bruise lasted about one month.

Three witnesses testified for the defense. Michael David's wife Bertha testified that she looked out the window of her house one day, and saw Andrew David chasing her daughter, Mary, age six. She told her husband about this incident. On cross-examination, the district attorney asked Bertha David if she knew what day this had occurred, and she said she did not. When asked how she knew this was the same day her husband had kicked Andrew David, she replied that her husband had told her.

Michael David testified that after his wife told him she had seen Andrew David chasing their daughter, he went outside to work on his sled and to keep an eye on Mary. Mary "came running in," according to Michael David, with Andrew David "chasing" her. Michael David went up to Andrew David, kicked him, and told him not to chase Mary. Michael David testified, "I thought he was going to do something toward my daughter. He was chas-

ing her and she was pretty scared." He also stated that Andrew David was two to three feet from his daughter when she was "running in." He testified, finally, "I have a right to protect my daughter. I thought she was going to be harmed."

On cross-examination, Michael David testified that when Andrew David saw him, Andrew David stopped and "acted natural." Michael David admitted he himself was not threatened in any way. In answer to another question, Michael David said that Andrew David frequently "bothered" his family, and that his uncle was a "nuisance." The prosecutor asked Michael David if this was the reason he kicked Andrew David. Michael David at first said "No!" but his response to further questioning was more equivocal.

Mary David was allowed to testify through an interpreter, despite her age. She stated that she was scared when Andrew David chased her. She also stated that she saw her father kick Andrew David, but she was standing near another house.

Defense counsel requested an instruction in the language of AS 11.81.340.[1] The trial judge denied the request.

■ The legal standard is clear: could the evidence presented at trial, viewed in the light most favorable to the defendant, arguably lead a juror to entertain, on the theory set forth in the proposed instruction, a reasonable doubt as to the defendant's guilt? *Paul v. State*, 655 P.2d 772, 775 (Alaska App.1982). Alternatively stated, did the defendant produce "some evidence" squarely placing the defense at issue? *LaLonde v. State*, 614 P.2d 808, 810 (Alaska 1980); *Bangs v. State*, 608 P.2d 1, 5 (Alaska 1980); *Folger v. State*, 648 P.2d 111, 113 (Alaska App.1982); *State v. Millett*, 273 A.2d 504, 508 (Me.1971).

■ Alaska Statutes 11.81.330 and 11.-81.340 contemplate a situation in which force is used by one who *reasonably believes* that force is necessary to prevent the use of unlawful force against a third person. Thus, the defense is composed of an objective element, *i.e.*, a reasonable belief that force is necessary, and a subjective element, *i.e.*, an actual belief that force is necessary. In *Weston v. State*, 682 P.2d 1119 (Alaska 1984), the supreme court concluded that the defendant had presented "some evidence" from which the jury might find that his use of deadly force in self-defense was justified under AS 11.81.-330 and 11.81.335. In concluding that there was evidence on both the objective and subjective portions of the defense presented there, the court emphasized that "the 'some evidence' rule requires crediting testimony which is favorable to the defense and discrediting that which is unfavorable." 682 P.2d at 1122. In examining whether a jury question had been raised on the objective portion, the court also made it clear that the surrounding circumstances must always be examined to determine what inferences the jury could have drawn. *Id.* Despite the fact that Weston had taken possession of the knife his attacker had wielded against him before Weston used the force he claimed was justified, the court concluded that there were circumstances from which "a jury could have con-

---

1. Alaska Statute 11.81.340 provides:

   *Justification: Use of force in defense of a third person.* A person may use force upon another when and to the extent the person reasonably believes it is necessary to defend a third person when, under the circumstances as the person claiming the defense of justification reasonably believes them to be, the third person would be justified under AS 11.81.330 or 11.81.335 in using that degree of force for self defense.

   Alaska Statute 11.81.330 provides:

   *Justification: Use of nondeadly force in defense of self.* (a) A person may use nondeadly force upon another when and to the extent the person reasonably believes it is necessary for self defense against what the person reasonably believes to be the use of unlawful force by the other, unless

   (1) the force involved was the product of mutual combat not authorized by law;

   (2) the person claiming the defense of justification provoked the other's conduct with intent to cause physical injury to the other; or

   (3) the person claiming the defense of justification was the initial aggressor.

cluded that at least a reasonable doubt existed that the danger to Weston had not ceased and thus that he acted reasonably in self-defense." *Id.* at 1120, 1122.

██ We believe Judge Cooke applied the correct standard to David's request. However, he seemed to conclude that no evidence had been presented indicating that harm to Mary David was even a possibility. This conclusion appears to ignore some of the testimony by defense witnesses.

Michael David's unequivocal statement that he thought his daughter would be harmed serves as evidence of the subjective aspect of the defense at issue here. There was also testimony that Andrew David was chasing Mary David, that he had chased her earlier that day, and that she appeared scared. We hold that this was evidence from which the jury could have concluded that at least a reasonable doubt existed that harm to Mary was a possibility, so that the objective portion of the defense was also presented.

██ In summary, since there was evidence from which the jury could infer that David believed he had to kick his uncle to prevent harm to his daughter, and that this belief was reasonable, he was entitled to an instruction on defense of a third person as justification for his conduct. Accordingly, his conviction must be REVERSED.[2]

---

**2.** In *Folger v. State,* 648 P.2d at 114 n. 3 (Alaska App.1982), we stated:

    We think a strong argument can be made that a trial judge should err on the side of giving instructions on self-defense so as to avoid a needless appellate issue in cases in which a weak case for self-defense is presented. We also think that in a case such as this where self-defense is presented as a possible

defense, there is a danger that the jury may consider its own understanding of what self-defense is in the absence of an instruction from the court. It seems preferable to have the jury correctly instructed.

We deem these remarks to be equally applicable to defense of third persons, especially where this is the defendant's main theory at trial.